| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Rosemary Gardey<br>Special Agent: Kara Klupacs | Telephone: (313) 226-9100<br>Telephone: (313) 202-3400 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.

Elroy KNOTT

Case No. 2:22-mj-30327
Judge: Unassigned,
Filed: 08-02-2022 At 01:08 PM
CMP USA v. Elroy Knott (krc)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 24 and 26, 2022__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(c) | Transmitting threats in interstate commerce |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Kara Klupacs - ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __August 2, 2022__

*Judge's signature*

City and state: __Detroit, Michigan__   Honorable Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT

I, Alcohol, Tobacco, Firearms and Explosives ("ATF"), Special Agent Kara Klupacs, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a special agent with the ATF. During my career, I have been involved in numerous investigations involving firearms and narcotics that resulted in successful federal and state prosecutions.

2. I make this affidavit from personal knowledge based on my participation in this investigation. The information comes from witnesses interviewed by law enforcement, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

3. This affidavit is for the limited purpose of establishing probable cause that Elroy Jerome KNOTT (DOB xx/xx/1998) has violated Title 18, United States Code, Section 875(c), transmitting threats in interstate commerce, and does not contain all details or facts known to law enforcement related to this investigation.

4. I am a Special Agent with ATF, and have been so employed since March 2018. I am currently assigned to the Detroit Field Division Group 2. I have graduated from the Federal Law Enforcement Training Center and ATF Special Agent Basic Training. Prior to becoming a Special Agent, I served eight years as a

1

federal law enforcement officer, both a U.S. Customs and Border Protection Officer out of the Port of Detroit and as a U.S. Secret Service Uniformed Division Officer in Washington, DC. During my employment with the ATF, I have conducted and/or participated in dozens of criminal investigations involving the possession and use of firearms, armed drug trafficking, and criminal street gangs, among other state and federal offenses.

5. In furtherance of these and other investigations, I have obtained numerous federal search warrants for residences, vehicles, social media accounts, cell phones, and other electronic storage devices.

6. I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

7. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant, and it does not set forth all of my knowledge about this matter.

## I.  CASE BACKGROUND

1. The Detroit Job Corps Center (DJCC) is a United States Department of Labor Equal Opportunity Employer Program focused on furthering education and training job skills to individuals between the ages of 16-24. In addition to providing free tuition, the DJCC offers room and board to students, with the majority of students residing at the campus. The DJCC, when at full capacity, houses approximately 300 students on its premises.

## II.  PROBABLE CAUSE

2. On May 2, 2022, I was contacted by the Department of Labor-Office of Inspector General (DOL-OIG) Special Agent Miguel Colon and advised that on April 26, 2022, the DJCC had contacted the Detroit Police Department (DPD) regarding phone calls made to the facility threatening to harm staff and the building occupants.

3. Special Agent Colon and I reviewed the associated police reports, interviewed multiple DJCC employees, interviewed DJCC resident A.L. (XX/XX/2003), and obtained Grand Jury Subpoenas for T-Mobile. During our investigation, Special Agent Colon and I learned that threatening phone calls were made to the DJCC on April 24 and April 26, 2022, all of which were likely made by KNOTT.

3

*April 24, 2022, Incident:*

4. Special Agent Colon and I reviewed the associated DJCC internal incident reports and interviewed DJCC Resident Advisor (RA) D.H. and Supervisor C.W. who had both received threatening phone calls on April 24, 2022. The following is a summary of the event:

   a. D.H. advised that while working the midnight shift, he had received a phone call in the downstairs dormitory office from DJCC student A.L. advising that if he received any threatening phone calls it was not her, and that she did not want to be evicted from the DJCC.

   b. Approximately five minutes later (12:58 a.m.), D.H. received a phone call from a restricted number. The caller was looking for A.L. and told D.H. "Tell that B**** to go get an abortion, because I'm not taking care of that baby." The caller then threatened that he was going to come to the DJCC, slap the security guard, and come in shooting looking for B.R. The caller then threatened they would get B.R. DJCC staff explained that A.L. had previously been in an argument with another DJCC student named B.R.

   c. Minutes later, the DJCC received a restricted phone call to the upstairs dormitory office which was answered by DJCC Employee I.B. I.B. received a similar threat, from a caller stating that he was going to shoot

4

      up the building and slap the security guard. The caller also stated that A.L. needed to get an abortion.

  d. The DJCC received another restricted phone call to the downstairs dormitory office. C.W. answered the third phone call and was told by the caller to get B.R. out of the center or he was going to slap the security guard and shoot up the place. The caller again stated that A.L. needed to get an abortion.

***April 26, 2022, Incident:***

    5.    Special Agent Colon and I reviewed Detroit Police Report (DPD Police Report# 220426-0390), reviewed Body Worn Camera (BWC) footage and interviewed DJCC Safety and Security Manager M.J., who had received multiple threatening calls on April 26, 2022. The following is a summary of the event:

  a. M.J. had been alerted by the DJCC security of an unfolding event related to phone calls regarding threats against the facility.

  b. M.J. had arrived to the DJCC around approximately 9:30-10:30 p.m., and had learned that KNOTT had called A.L.'s personal cellphone and was making threats. M.J. went to the dormitories to meet with A.L. who informed him that she was currently on the phone with KNOTT. M.J. then identified himself and spoke with KNOTT on A.L.'s phone. During this conversation, KNOTT accused M.J. of sleeping with A.L. He then

5

threatened to come to the facility, "shoot the place up," and shoot M.J. in the back of the head. KNOTT advised M.J. he was on his way to the DJCC facility to shoot him.

c. M.J. recognized KNOTT's voice as the caller placing the threats based on his prior interactions with KNOTT.

d. M.J. returned to the security booth at the main entrance of the DJCC, called DPD, and told the unarmed security officers to leave the booth. While inside the booth, M.J. received multiple calls from an individual believed to be KNOTT telling M.J. he was on his way to the DJCC.

e. At approximately 11:01 p.m., DPD Police Officers responded to the DJCC for the report of threats. Once at the scene, DPD Officers met with M.J. who reported the threatening phone calls. M.J. also advised officers that the caller's phone number was showing up as restricted on the DJCC call log.

f. M.J. then led DPD officers to DJCC dormitories to meet with A.L. A.L. advised officers that she had known KNOTT for approximately one year and that he is the father of her child. A.L. advised that KNOTT was upset that she was enrolled in the DJCC and wanted her to be evicted from the facility. A.L. further advised officers that KNOTT possessed

6

    firearms, and that she had previously seen him shoot a firearm into the air.

    g. While speaking with officers, A.L. received a phone call from a restricted number. She answered the phone and put the call on speakerphone in front of DPD officers. She addressed KNOTT by his nickname "Roy" to which the caller responded acknowledging it was him. When A.L. confronted KNOTT about calling in to the DJCC on multiple occasions, KNOTT responded "I've only been calling today."

    **h.** The DJCC facility was locked down for approximately 48 hours, with all doors and gates being locked and with students being restricted from any outside activities. DPD Officers conducted surveillance in the areas associated with KNOTT with negative findings.

6. On May 5, 2022, Special Agent Colon obtained and served a Grand Jury subpoena to T-Mobile for the records associated with phone number associated with KNOTT.

7. On May 9, 2022, Special Agent Colon and I received the requested records from T-Mobile. I also reviewed the call log associated with the phone number associated with KNOTT and observed that numerous calls were placed during the month of April 2022 to the DJCC mainline. I also observed that the majority of these calls were dialed as "*673138520300". I am aware that dialing

7

"*67" prior to dialing the call number of a device would prevent the call recipient from being able to view the caller's phone number.

8. I observed that on April 24, 2022, the phone number associated with KNOTT made three (3) calls to the mainline for the DJCC at approximately 12:56 a.m., 12:58 a.m., and 1:00 a.m. I observed that these calls were placed utilizing the *67 feature. I also observed that these phone calls occurred when the threatening calls described by DJCC Resident Advisor (RA) D.H. and DJCC Supervisor C.W. took place.

9. Furthermore, I observed that on April 26, 2022, the phone number associated with KNOTT placed six (6) calls utilizing the *67 feature to the DJCC mainline at approximately 8:35 p.m., 9:09 p.m., 9:11 p.m., 10:46 p.m., 10:50 p.m., and 10:59 p.m., respectively. I further observed that during this same timeframe numerous calls were placed to the phone number XXX-XXX-8440 (the phone number associated with A.L.). These calls were also placed utilizing the *67 feature. I noted that these phone calls were placed during a timeframe consistent with DPD's documentation and M.J.'s statements regarding when the threats were made.

*Interstate Nexus*

10. The threats were transmitted in interstate commerce as the threats were transmitted by a cellular phone and the calls were routed by T-Mobile through a switch in Illinois.

8

*KNOTT'S Prior Police Contact Involving Threats*

*DPD Police Report# 170331-0382*

11. On March 31, 2017, DPD Officers responded to the residence located 19XXX Glastonbury, Detroit for a report of threats. Once at the scene officers met with the victim E.R. (DOB: XX/XX/1999) who stated that she had been receiving threatening communications from KNOTT. E.R. explained that KNOTT was upset with her because she would not be romantically involved with him, and that KNOTT frequently called her to tell her he would rape her. E.R. stated that today KNOTT had called her stating he would shoot up her house. Later that day while E.R. was backing her grandmother's vehicle out of the driveway her vehicle was struck by another vehicle. E.R. explained that KNOTT was in the front passenger seat of that vehicle.

*DPD Police Report# 191122-0118*

12. On November 22, 2019, C.H. (DOB: XX/XX/1997) walked into the DPD 6th Precinct reporting that her life and her child's life had been threatened by her ex-boyfriend KNOTT. C.H. stated that KNOTT had texted her several times advising her that he would rape and kill her and her 8-month-old daughter.

9

*DPD Police Report# 210514-0175*

*13.* On May 14, 2021, officers responded to 14xxx W. 8 Mile Rd in Detroit for the report of threats. Upon arrival DPD officers met with the victim, R.F. (DOB:XX/XX/1988), who explained that her former patient, KNOTT, had called the location demanding money he believed was owed to him. KNOTT then began to make threats to blow up R.F.'s car, and that he was going to follow her home and kill her.

*DPD Police Report# 211128-0093*

14. On November 28, 2021, DPD officers responded to xxxxx W. 7 Mile Rd. in Detroit for the report of Domestic Violence. Upon arrival, officers met with the victim, C.M. (DOB: xx/xx/1998) who advised officers that the day prior she had been away from her residence when someone broke into her residence and stole her 60" LG TV, her birth certificate and her State Identification Card. C.M. advised officers that she had received a video from KNOTT of him inside her apartment stealing her items followed by more text messages threatening her.

**Forensic Examination of Knott's Cell Phone Shows Him in Possession of Firearms**

15. I have observed KNOTT' Instagram profile which includes a photograph of KNOTT holding an AR magazine in his right hand, a rifle in his left hand, and a pistol in his waistband.

10

16.     On June 7, 2022, I obtained a cell phone from KNOTT pursuant to a federal search warrant and a physical review and forensic extraction of the phone were performed. As part of that review, I observed multiple videos of KNOTT in possession of firearms.

17.     A video on KNOTT's phone from April 4, 2022, shows KNOTT inside of a residence rapping while holding two Glock pistols. See image below:



i.

### III.     CONCLUSION

18.     Based on the above information, probable cause exists that KNOTT did knowingly transmit in interstate commerce for the purpose of issuing a threat to

11

injure the person of another, and with knowledge that the communication will be viewed as a threat to injure the person of another in violation of 18 U.S.C. § 875(c).

19. In consideration of the foregoing, I respectfully request that this Court issue a complaint against KNOTT for violations of 18 U.S.C. § 875(c).

20. Further in consideration of the foregoing, I respectfully request that this Court issue an arrest warrant for KNOTT for violations of 18 U.S.C. § 875(c).

Respectfully submitted,

_____
Kara Klupacs, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and signed in my
presence and/or by reliable electronic means.

_____
HON. ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Date: August 2, 2022